**Polar Wave Ice and Fuel Company, Appellant, v. Alton Branch of the Illinois Humane Society, Appellee.**

1. ANIMALS—*what not within power of humane society.* A humane society has no power to kill or destroy the horses or animals of another without his consent whether such animals be suffering from disease, starving or otherwise suffering, and this is the case even if the animals are without value and admittedly so.

2. TORTS—*what does not justify.* One who invades the rights of another and transgresses the law does so at his own peril; he cannot exempt himself from punishment, when he misapprehends the law, because he believes that he was right.

3. DAMAGES—*when proof not essential.* If the defendant has wrongfully invaded and trespassed upon the plaintiff's rights without authority, actual or apparent, proof of damages is not necessary to sustain a recovery.

Action commenced before justice of the peace. Appeal from the Circuit Court of Madison county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed April 9, 1910.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant; B. J. O'NEILL and NAGEL & KIRBY, of counsel.

J. F. McGINNIS, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

This suit was originally brought before a justice of the peace, and resulted in a dismissal thereof at the plaintiff's costs. It was then appealed to the Circuit Court of Madison county, where upon a jury trial, judgment was entered in favor of defendant in bar of the action and for costs. The Polar Wave Ice and Fuel Company has appealed to this court from the judgment of the Circuit Court.

The appellant had about sixteen horses on its pasture known as Kersch pasture about two or three miles above Alton. One of them, a bay horse, had been foundered and was lame as a result thereof. Another, a black horse, was lame by reason of nails picked up in two of its feet. These horses had been sent there from St. Louis where they had been used in appellant's business; and were in said pasture for the purpose of being rested up and treated by a veterinarian. As the horses grew better, they were used on an island in the Mississippi river west of Alton for farming and hauling wood. A Mr. Reeves lived close to the Kersch pasture and was hired to give these horses daily attention, being directed in their treatment by a veterinary surgeon, Dr. J. C. Booker. On July 2, 1908, the president of appellee, Mrs. Angie Schweppe, and Mrs. Sophia Demuth, both appellee's agents, accompanied by Henry Tisius, a police officer of the city of Alton, went to the Kersch pasture and the officer, under the direction of Mrs. Schweppe and Mrs. Demuth, killed the two horses above described, the bay and the black horse. No notice of any kind had been given to appellant regarding the intended action of appellee nor was any hearing of any kind had, nor had the horses been examined by any veterinary surgeon other than Dr. Booker before they were killed. Appellant brought suit against appellee for their value with the above results. The above statement is substantially the one made in appellant's brief and is found to be accurate.

Appellant's counsel insists here (1) that the verdict is contrary to the law and the evidence; (2) that the court erred in giving and refusing instructions; (3) that the court erred in overruling appellant's motion for a new trial and in entering judgment against appellant.

All of the errors assigned must be sustained as it is evident that this cause was tried on a misapprehension of the law.

The second, third, fourth and sixth instructions given by the court for the appellee states clearly the theory of the defense which was sustained by the court, and they are as follows:

"The court instructs the jury that although you may believe from the evidence that the horses in controversy were killed by the defendant's officers, still, if you further believe from the evidence that said horses were valueless from disease, then you will find for the defendant.

"That before the plaintiff can recover in this case it must prove the value of said horses, and if you believe from the evidence they were useless and without value, you will find for the defendant.

"That the law is, where an animal is suffering from disease and there is no probability of its recovery, the killing of said animal is justifiable in order to put said animal out of misery; and if you believe from the evidence in this case that at the time said horses were killed by order of the officers of the defendant they were suffering from disease and there was no probability of them recovering and that they were without value, then said defendant was justified in having said horses killed, and you will find the defendant not guilty.

"That if you believe from the evidence that at the time the defendant, through the instructions of Mrs. Schweppe and Mrs. Demuth, officers of said defendant, the plaintiff's horses were killed; and you further believe from the evidence said horses were in such physical condition from disease that there was no probability of their recovery, and that they were of no value,

then it was only a humane act to have them killed, and the jury will find the defendant not guilty.''

In the giving of these instructions we think the learned judge erred as to the law applicable to the case. These errors were also emphasized by the modifications of appellant's first and second instructions by striking out the word ''wilfully'' and other words stricken therefrom by the court and substituting the words, ''without right,'' and the other words therein substituted by the court. With the substituted words, ''without right,'' the jury necessarily were referred to the defendant's instructions for their information as to when and under what circumstances the defendant would have a right to kill the horses as no information was given by the modified instructions as to when or under what circumstances the defendant would have such right. Instruction No. 1 given for appellee, is erroneous because it is in substance the same as appellee's No. 2. Appellee's instruction No. 5 is, under ordinary circumstances, correct, but might have very properly been refused in this case because there is no evidence on which to base the latter part of it, ''if the jury believe from the evidence that the plaintiff has not so proven its case, or that the evidence on the issues involved in this case is evenly balanced.'' As the evidence appears in this record, taking the evidence for the defense alone, there is no sort of question of the right of plaintiff to recover in this case. The evidence is all to that effect and there is nothing in the evidence so far as we are able to find looking toward a defense on the merits, except as to the amount of damages sustained by the plaintiff. The police officer who killed the horses, Henry Tisius, testified that these horses belonged to the plaintiff and that he killed them by the instruction of Mrs. Demuth and Mrs. Schweppe. He even goes to the extent of saying there ought to have been more of plaintiff's horses shot. Mrs. Schweppe, president of defendant, and Mrs. Demuth, agent of defendant, both testify that they, as such officer and

agent, had these animals killed as a humane act, because they were evidently starving, suffering very greatly and because in their judgment they could not get well. They had been positively informed however by the veterinarian, Dr. Booker, that they would get well. They both positively testify that they got no permission or consent from the plaintiff or from any one else to kill these animals. The owner without any opportunity of being heard or consulted, was invaded in its possession of the pasture, and its horses killed in a wilful act of trespass without a claim of legal right except that they were officers of a humane society. Whatever difference of opinion might justly arise as to the humane way of treating a hungry horse that could not get food, or that was so diseased that he could not recover, in our opinion there can be no question about the law in such cases where they are killed without authority of law and without consent of the owner. There is no authority conferred by statute in this state, or by other law in force in this state, of which we are aware, whereby any humane society or member thereof has any authority or power whatever to kill or destroy the horses or animals of another without his consent, whether such animals be suffering from disease, starving, or otherwise suffering; and this is the case even if the animals are without value and admittedly so.

The appellant's constitutional right was invaded. "No person shall be deprived of life, liberty or property without due process of law." Bill of Rights, Sec. 2, Art. 2, Const. 1870.

The phrase "due process of law," which is equivalent to the words "law of the land," as used in Magna Charta, means "in the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights." Burdick v. The People, 149 Ill. 600; Board of Education v. Bakewell, 122 Ill. 339; Campbell v. Campbell, 63 Ill. 462.

Before the defendant could be justified or relieved

Fourth District—April, 1910.    315

Polar Wave I. & F. Co. v. Ill. Humane Soc., 155 Ill. App. 310.

from liability for killing the horses or animals of another without consent, it must have such authority conferred by statute that is constitutional, and no act could confer such authority, that did not give the owner a right to be heard in a judicial or other similar proceeding and that did not make provision for just compensation for the value thereof. The defendant in this case had no legal authority whatever to kill these horses for any reason; and if it had such authority for the reasons it urged, the plaintiff should have had the opportunity to be heard and to show, if it could, that no such reasons existed. "Even the state, in its sovereign capacity, cannot, under the guise of police regulations, arbitrarily invade private property rights. It is only when the property is such as to become a nuisance *per se* that the legislature has power to provide for its seizure and summary destruction." Even in such cases of nuisance the owner must have notice and a hearing. Pearson v. Zehr, 138 Ill. 48; McConnell v. McKillip, 71 Neb. 712, 65 L. R. A. 610; Loesch v. Koehler, 144 Ind. 278, 35 L. R. A. 682; Varden v. Mount, 78 Ky. 86, 39 Am. Rep. 208; Miller v. Horton, 152 Mass. 540, 10 L. R. A. 116; King v. Hayes, 80 Me. 206; Lowry v. Rainwater, 70 Mo. 152, 35 Am. Rep. 420; Carter v. Colby, 71 N. H. 230; Rockwell v. Nearing, 35 N. Y. 302. There are only a few well known exceptions to the foregoing rules based on grounds of governmental necessity.

"Neither the suffering or distressed condition of the animal, nor the misconduct or delinquent attention of the owner, will justify the seizure or killing, unless the facts relied on actually exist as prescribed by a lawful statute." Pearson v. Zehr, 138 Ill. 48; Goodwin v. Toucey, 71 Conn. 262; Brill v. Ohio Humane Society, 4 Ohio C. C. Rep. 358; Sahr v. Scholle, 89 Hun, 42.

"When one man invades the rights of another and transgresses the law, he does so at his peril. He cannot exempt himself from punishment when he misapprehends the law, because he believes that he was right.

He is bound to know the law, and if he does not, it is his duty to acquire such knowledge. Action, without it, must be regarded as reckless." Jasper v. Purnell, 67 Ill. p. 361; Johnson v. Camp, 51 Ill. 219.

Proof of value was not necessary to entitle appellant to judgment. "It is error in such a case, for the court to instruct the jury that, to recover, the plaintiff must prove, by a preponderance of the evidence, that the animal was his property, and was of some pecuniary value." The law recognizes the right of property in all domestic animals, even in dogs, and if it is destroyed without legal justification, the law implies damages, and a plaintiff in such case is entitled to at least nominal damages, as it does in every case of illegal invasion of the right of property of another. Brent v. Kimball, 60 Ill. 212; Plumleigh v. Dawson, 1 Gilman, 544; McConnel v. Kibbe, 33 Ill. 175; Pfeiffer v. Grossman, 15 Ill. 53; 1 Cooley on Torts, secs. 67-71, 3rd ed.

It will not be profitable to further comment upon the various errors assigned or upon the facts in the record. We think all the instructions offered by appellant stated correctly the law applicable to this case. It follows from what we have said and the authorities above cited that the only question in this case under the facts in the record was as to the amount of damages that should have been awarded. The evidence of appellee to the effect that the horses were killed as a humane act was not admissible as a complete bar to the action.

For the errors indicated the judgment of the lower court is reversed and the cause remanded for further proceedings.

*Reversed and remanded.*